EDMUND S. PARKER, DEFENDANT IN ERROR, v. JOHN L. YOUNG, PLAINTIFF IN ERROR.

Argued March 20, 1906—Decided November 19, 1906.

1. In an action by the holder of a check against the maker, the latter testified that he had placed the check in the hands of an attorney not to be delivered to the payee until he, the maker, got a receipt from one Busch that a certain sum of money had been paid by the payee named in the check to the said Busch, and that he, the maker, had never received the receipt. It appeared that the attorney held the check for about sixteen months; that he had several times during this period asked the maker about the check, who said either that he had not seen Busch or that Busch had not seen him.

2. It was testified that at the last interview the maker said that he was satisfied that the money had been paid to Busch but that he had another defence to the note. The attorney then delivered the check to the payee.

3. The trial justice charged the jury that if the maker used this language at the last interview it excused the payee and the attorney from producing and delivering to the maker a written receipt from Busch. *Held,* that in the circumstances there was no error in the charge.

On error to the Supreme Court.

For the plaintiff in error, *Thompson & Cole.*

For the defendant in error, *Bourgeois & Sooy.*

The opinion of the court was delivered by

REED, J. This writ brings up a judgment entered in an action against John L. Young. The action was to recover $2,500, the amount of a check signed on November 5th, 1898, by Young, made to the order of the Atlantic Palace Circle Company, which check, by endorsement, came into the hands of the plaintiff, Edmund S. Parker.

The defence set up at the trial was that the check had been delivered to Mr. Bourgeois to hold under an agreement that it was not to be delivered to the Palace Circle Company until

the occurrence of certain conditions; that those conditions never happened, and so the delivery of the check by Bourgeois to the payee was without authority.

The circumstances which surrounded the transaction were these: The Atlantic Palace Circle Company held a lease upon property in Atlantic City, which it used as a site for a merry-go-round. The owner and lessor of the property was .Clarence M. Busch. The Circle company, the lessee of Busch, paid the second installment of rent, amounting to $2,500, in September, the payment being in advance of the time mentioned in the lease, which was November 1st. After this payment, but before November 1st, the merry-go-round was destroyed by fire. The Circle company started to rebuild, when Mr. John A. Young proposed to the Circle company, the lessee, that he would pay to it the $2,500—the installment of rent which it had paid to Mr. Busch—if the Circle company would assign the term to him, Young. This proposition was accepted by the Circle company. It had the assignment of the lease executed and approved by its board of directors. On November 5th, 1898, the parties met at the office of Mr. Bourgeois to consummate the transaction. After the check for $2,500 to the Circle company was drawn and signed by Mr. Young, some conversation took place in respect to withholding its delivery until Mr. Young was assured that this $2,500 had been actually paid to Busch by the Circle company.

It is to be observed that if the Circle company had paid Busch the $2,500 due November 1st, then the rent due under the lease that Young was to get was paid up to the following February, but if it was not paid, Young would have been compelled to pay the November installment over again to Busch to enable him to hold possession after November 1st. After some discussion it was agreed that the check should be put into the hands of Mr. Bourgeois, a lawyer, who had prepared the lease for the Circle company.

The question at the trial was in what circumstances Mr. Bourgeois was to deliver the check of Mr. Young to the Circle

company. There was some contrariety in the statements of those present at the meeting of November 5th as to what was said at that time.

The account given by Mr. Parker, who was president of the Circle company, and who represented it at that meeting, ·is that "Mr. Young stated that he had no way of knowing that the Circle company had actually paid Mr. Busch, and asked that it would wait until Mr. Busch came home, so that he could find out whether the money had been paid." Mr. Parker says that to that statement of Young's he remarked "that he would not wait another minute, but that they would go on and rebuild." Then he says Mr. Bourgeois spoke up and said, "Suppose I hold the check until Mr. Busch comes home and Mr. Young can find out from Mr. Busch that we have paid the money." He says Mr. Young assented to that. This is Mr. Parker's statement of what occurred at the meeting.

Mr. Bourgeois says that he was to retain the check until Mr. Young should be able to see Mr. Busch, and he (Young) agreed to that.

Mr. Young's account of what was said differs from these. He says, "I made out the check, and I said, 'When you give me the receipt from Mr. Busch, and the assignment of the lease, so I can get possession of the ground, the check is good.'" On the trial Mr. Young insisted that he never got the receipt nor an assignment of the lease.

After the check was delivered to Mr. Bourgeois he says he put it in his safe, and it remained there for about a year and four or five months; that during that time he saw Young several times about turning the check over, and that on a number of these occasions Mr. Young said that he had not seen Busch, or that Busch had not seen him; that the last time he saw Young he said to Young, "I have come down again about that check, and I would like to know whether or not you are satisfied it is paid." Young said, "Oh, yes; I am satisfied it is paid." He said, "Go up and see my lawyer." Mr. Bourgeois went to see the lawyer, and told him what Mr.

Young had said, and the lawyer remarked, "Oh, yes, we are satisfied it is paid, but there is another defence to that." Mr. Bourgeois then said, "I will turn it over to the Circle company." And he did so.

Mr. Parker also says that he saw Mr. Young the latter part of January or February, when Mr. Young told him he knew the check had been paid, but that he had another defence, and said he would not pay it.

All save the first two assignments of error are directed to alleged errors in the charge of the court.

The third assignment criticises the remarks of the court in respect to the conditions upon which the check was to be turned over—whether upon Mr. Young seeing Mr. Busch to ascertain whether the $2,500 had been paid or whether it was upon Young being satisfied that it was paid. The court said that it left it to the judgment of the jury whether the difference between these two forms of expression was of any consequence, and the court proceeded to express its own opinion that it was of very little consequence whether the expression was in one form or the other. The language of the judge was a legitimate expression of opinion submitted to the jury for its consideration, and was not a direction intended to bind the jury. Indeed, all the trial court said upon the aspect of the case, as presented by the testimony delivered by the plaintiff's witnesses, namely, that the condition was substantially that Young should be satisfied, was unobjectionable.

Then, the trial court dealt with the case as presented by the defendant, who, as already observed, stated that the condition was that he was to have an assignment of the lease and also a written receipt from Busch for the $2,500 which had been paid.

The court charged, in substance, that if that was the condition, then, if Young did not have the lease, the verdict must be for him. The court also charged that if, as a part of the condition, Mr. Young was to have a written receipt, Parker should have furnished such written evidence, unless this was excused by the subsequent conduct of the parties.

Upon the question of what would excuse the plaintiff from the production of such written receipt, the court used the following language: "Upon that subject it is important to consider what Mr. Young said when Mr. Parker and Mr. Bourgeois subsequently went to him. As I understand it, he first professed, according to their testimony, that he was satisfied the rent had been paid, but claimed he had another defence. If he did that—if he professed his satisfaction that the rent had been paid, but spoke of some other defence—then Mr. Parker was excused from producing the written receipt, even although you think that was the original contract between the parties."

It is perceived that the trial court charged, not merely that from the language used by Young the jury could find a waiver for the production of the written receipt, but it charged that if the jury found such language was used, it amounted to a waiver. The correctness of this language is challenged by an exception and by an assignment.

The language of Mr. Young, thus alluded to, was the culmination of previous conduct which implied that he did not rely upon the condition that the plaintiff should get a receipt from Mr. Busch. In all the interviews with Mr. Bourgeois— save the last one—during the period the check was in escrow. according to the testimony of Mr. Bourgeois, which is not denied by Mr. Young, the latter said nothing about the plaintiff or about Bourgeois procuring a receipt from Busch. What Mr. Young said was that he had not seen Mr. Busch, or that Mr. Busch had not said to him that the check was paid. Mr. Parker says, also, that he saw Young a number of times, and sometimes Mr. Young would say that he could not see Busch, and sometimes he would say that he could not get any satisfaction out of Busch. This testimony is not denied by Mr. Young. So in none of these conversations with Parker or Bourgeois did Mr. Young say, "I have no reason to see Busch, because you are to get a receipt from him." His entire language and conduct could give but one impression, which was, "I am to see Busch and be assured by him that the November installment of rent has been paid." At the last of these inter-

views came his declaration that he was satisfied that this money had been paid, but that he had another defence to the check. This language was capable of but one interpretation. Young, in substance, said: "So far as the payment of rent is concerned, that is all right; I have no defence upon that ground. The defence I now intend to assert is of another kind." After this declaration, the check was delivered and sued upon.

If the jury had found specially that the contract was as Young states it, and thus found that Young had used the language that Parker and Bourgeois ascribed to him, I think it could be declared, as a legal conclusion, that Young had waived his right to set up the defence that he had received no receipt. The jury having found that the lease and assignment was delivered to Young, it could have done nothing else but find that the objection to turning over the check for the want of a receipt was waived.

It is also assigned for error that the trial justice added to the remarks which are the subject of the last-mentioned exception the following words: "No other defence is introduced in this action." It is claimed that this is error, because there was a defence other than the one for the receipt, namely, the defence that there was a failure to deliver the assignment of the lease.

This language, however, could not have misled the jury, for it was obvious that the judge was referring to a defence other than this, for he had explicitly charged that if the condition was as stated by Mr. Young, then the question was whether Mr. Young had an assignment of the lease, and if he had not, the verdict should be for him.

No other assignment possesses sufficient substance for any special remark, and the judgment should be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, FORT, GARRETSON, HENDRICKSON, PITNEY, REED, BOGERT, VREDENBURGH, VROOM, GREEN, GRAY. 13.

*For reversal*—None.